IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| ROBERT F. WEST, FOR OPAL TERRY WEST, DECEASED, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:12CV00059 |
| v. | ) ) | **OPINION** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,[1] | ) ) ) ) ) | By: James P. Jones United States District Judge |
| Defendant. | ) | |

*John M. Lamie, Browning, Lamie & Gifford, P.C., Abingdon, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, Antonia Pfeffer, Assistant Regional Counsel, and Alexander L. Cristaudo, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this Social Security case, I affirm the decision of the Commissioner.

I

Plaintiff Robert F. West, on behalf of his deceased wife Opal Terry West, filed this action challenging the final decision of the Commissioner of Social

---

[1] Carolyn W. Colvin became the Acting Commissioner on February 14, 2013, and is substituted for Michael J. Astrue as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

Security (the "Commissioner") denying his late wife's[2] claim for a period of disability and disability insurance benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C.A. §§ 401-34 (West 2011 & Supp. 2013). Jurisdiction of this court exists under 42 U.S.C.A. § 405(g).

West protectively applied for benefits on April 23, 2008. Her claim was denied initially and upon reconsideration. A hearing was held before an administrative law judge ("ALJ") on May 18, 2010, at which West, represented by counsel, and a vocational expert ("VE") testified. On July 8, 2010, the ALJ issued a decision finding that West could perform light work with certain postural and exertional limitations, and thus was not disabled under the Act. West requested review by the Social Security Administration's Appeals Counsel. On August 9, 2012, the Appeals Council denied the plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. Robert West then filed a Complaint in this court seeking judicial review of the Commissioner's decision.

The parties have filed cross motions for summary judgment, which have been briefed and orally argued. The case is now ripe for decision.

---

[2] Opal Terry West was the original claimant for disability insurance benefits in this case. The Social Security Administration substituted Robert F. West as claimant on his wife's behalf following her death in September 2011, during the pendency of her request for review by the Social Security Administration's Appeals Council. If it were to be determined that Opal West was disabled before her death, her husband would be entitled to receive the benefit payments owing to her for a period ending in August 2011, one month before her death. *See* 20 C.F.R. §§ 404.316, 404.503(b)(1) (2013). Throughout this opinion, I will refer to the Wests collectively as "West" or "the plaintiff."

II

West claimed disability based on arthritis in her back, degenerative disc disease, heart problems and stroke. (R. at 158.) At various times throughout the pendency of her claim, West also claimed to suffer from joint pain, osteopenia, anxiety, depression and memory problems. (R. at 69, 70, 72, 158.) The plaintiff completed the ninth grade, and her only employment over the course of her life was as a bookkeeper and clerk for her husband's business. (R. at 167, 169.) West testified that she began working for her husband's company in 1978, but she only started to receive compensation as an employee in 1997. (R. at 31.) She was 62 years old on the date of the ALJ's decision, making her a person of advanced age under the regulations. *See* 20 C.F.R. § 404.1563(e) (2013). The record indicates that West did not engage in substantial gainful activity since the alleged onset date of February 28, 2007.

West has a lengthy history of medical treatment related to her cardio-vascular conditions. She testified that she suffered several mini-strokes, leading her to undergo a mitral valve replacement in 2004. (R. at 236, 270-71.) West continued to complain of chest pain even after her surgery. She was evaluated on January 29, 2007, for unusual chest pain, but was found to exhibit no cardiovascual symptoms and was ultimately diagnosed with vertigo. (R. at 241, 256.) Martin McGreivy, M.D., prescribed Aggrenox for the plaintiff following this event in

order to manage her cardiac symptoms. (R. at 264.) On June 20, 2007, West was again admitted to the hospital with complaints of chest pain, but was again not found to be experiencing an acute event. (R. at 288.) On January 23, 2008, cardiologist Lacyoni Moraes, M.D., evaluated the plaintiff's complaints of chest pain and noted that he "doubted if her chest pain is cardiac in nature. It is very similar to what she had only 2-1/2 years ago when she had heart cath done and revealed normal coronaries . . . ." (R. at 363.) It does not appear that the plaintiff experienced any acute instances of chest pain during the relevant period, and the record presents no evidence of any additional mini-strokes. West reported few or no functional limitations arising from her cardiac history, other than only being able to walk about a quarter mile before needing to rest. (R. at 210.)

West has also claimed disability on the basis of pain in her back, legs and knees. The plaintiff reported that she has been experiencing some level of this pain for twenty-five years. (R. at 344.) She testified that she has constant pain "[a]ll over" and that the pain has made it difficult to clean her home or garden as she once did. (R. at 74-75, 77.) Prior to the alleged onset of disability, the plaintiff was diagnosed with osteoarthritis, osteopenia, and degenerative disc disease. (R. at 230, 243, 250.) It should be noted, however, that the plaintiff was given a full physical in October 2006, just a few months before the alleged onset of disability. (R. at 243-46.) She was found to be negative for back pain and to have a grossly

normal gait, muscle tone and muscle strength. She also had full, painless range of motion of all major muscle groups and joints.

In June and July of 2007, West complained of increased right leg and lower back pain. (R. at 481.) In August 2008 the plaintiff's condition was evaluated by Jim Brasfield, M.D., who concluded that age-related facet disease was bilaterally present at all levels. (R. at 330.) Dr. Brasfield further noted lumbar myleogram findings of spondylosis and disc protrusion most marked at L3-4 and L4-5. (R. at 327.) West was also evaluated by Simon Pennings, M.D., who diagnosed her to be suffering from degenerative disc disease of the lumbar spine. (R. at 346.) Dr. Pennings noted no atrophy, and found her to exhibit negative tension signs of the bilateral lower extremities. He found no pain with internal and external rotation of the bilateral hips.

In September 2007 West returned to Dr. Brasfield, who evaluated the results of her tests and recommended an epidural injunction to assist with her pain management. (R. at 343.) West received such an injunction in October 2007, but reported experiencing no symptomatic relief as a result. (R. at 476.) Despite this failure, the plaintiff consistently declined any opportunity to discuss surgery as a treatment option. (R. at 346.)

The plaintiff has also reported pain in her right hip and leg, as well as in her right shoulder and all over her body. On September 12, 2007, she was evaluated

by Stephen Wayne, M.D., who administered an electrodiagnostic test for pain. (R. at 334.) Dr. Wayne concluded that the pain West exhibited on strength tests suggested some element of hip bursitis or an arthritis problem. (R. at 335.) Casey McReynolds, M.D., who evaluated West on July 2, 2007, concluded that her hip exhibited mild osteoarthritic changes. West also reported pain associated with a torn rotator cuff in her shoulder, but this appears to have been successfully resolved with physical therapy. (R. at 420.) Finally, West underwent a whole-body bone scan on October 10, 2008, to address her complaint of experiencing pain all over. The scan was found to be unremarkable. (R. at 493.)

Both before and after the alleged onset of disability, the plaintiff's primary method of treating her joint and back pain were prescriptions for Celebrex and Tramadol. (R. at 345.) These prescriptions remained unchanged through the relevant period, other than West's decision to stop taking Celebrex in March 2010. (R. at 479.)

Finally, the plaintiff has a limited history of seeking counseling and other treatment for mental impairments. At her physical in October 2006, the physician observed her to be negative for anxiety, depression and sleep disturbance. (R. at 243.) The physician noted that she was oriented to person, place and time, and presented with an appropriate and cooperative mood. Her recent and remote memory were intact, and she demonstrated good insight and judgment. (R. at 245.)

On June 20, 2007, West sought treatment for a number of conditions, including anxiety and insomnia. The physician, Mohit Anand, M.D., noted that social factors were contributing to her increasing anxiety and insomnia, and that "she would certainly benefit from anti anxiety medications and an outpatient followup with a neurologist and Senior Life Consult Solutions . . . ." (R. at 289.) Dr. Anand noted that the plaintiff ultimately elected not to seek outpatient treatment or counseling, because she wanted to "try to deal with her social situations on her own without seeking help for time being." *Id.* West was ultimately issued prescriptions for anti-anxiety and sleep-aid medications. (R. at 367.) It appears that West continued to take an anti-depressant medication throughout the relevant time period. (R. at 507.)

West's record of treatment for her mental impairments is limited. She attended six appointments with Judy Mink, a licensed clinical social worker, between July 22, 2007, and November 8, 2007. The plaintiff stated that she was experiencing symptoms including low self-esteem, low energy and fatigue, decreased sex-drive, increased stress, and panic attacks. (R. at 356.) The plaintiff also stated that she had few close relationships and was a victim of verbal abuse. Nonetheless, she told the counselor that she was experiencing no problems with work. (R. at 357.) On her list of medical ailments affecting her mental status, West identified frequent headaches, high blood pressure, heart trouble and sudden

weight loss or gain, but she did not identify chronic pain. (R. at 359.) The counselor observed West to be cooperative, warm, frank, capable, responsible and passive. Her memory, judgment and insight were intact, she was oriented times three, and she appeared to be of average intelligence. Her thought process flowed smoothly, her thought content showed no abnormalities, and her ability to think abstractly was normal. (R. at 354.) The counselor further noted her mood exhibited symptoms of sleep disturbance, depression, loneliness, frustration and anxiety. *Id.* Despite many positive observations, the counselor assigned a Global Assessment of Functioning ("GAF") score of 59.[3] The plaintiff attended an additional five counseling sessions with Ms. Mink, but the records do not offer any additional insights. (R. at 348-352.)

Finally, at the request of her attorney in this matter, the plaintiff was also evaluated in May 2010 by Wayne Lanthorn, Ph.D., a licensed clinical psychologist. (R. at 503-513.) Dr. Lanthorn conducted a number of tests and concluded that West had a full scale IQ of 81, placing her in the Low Average Range of intelligence. He assigned her a GAF score of 50. Dr. Lanthorn observed

---

[3] A GAF score indicates an individual's overall level of functioning at the time of examination. It is made up of two components: symptom severity and social occupational functioning. A GAF score ranging from 61 to 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning; a GAF score ranging from 51 to 60 denotes functioning with moderate symptoms or moderate difficulty in social, occupational, or school functioning; a GAF score ranging from 41 to 50 indicates functioning with serious symptoms or any serious impairment in social, occupational, or school functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed. 2000).

that the plaintiff had been depressed for many years and had a low degree of energy, enjoying very little. She reported frequent panic attacks, and that she was often tense and easily agitated. Dr. Lanthorn also administered the P/3, a test designed for individuals experiencing chronic pain measured on three levels of severity. He concluded that she scored in the "most extreme range on all three levels measured." (R. at 509.) Dr. Lanthorn noted that she exhibited chronic fatigue, anhedonia, sadness, listlessness and disruption of sleep patterns to such a degree that she "may well have given up hope and lack[ed] the motivation required for participating in a treatment program." (R. at 510.) Dr. Lanthorn concluded that West would have no limitations learning simple tasks in the work place, but "even moderately complicated tasks" would cause her mild to moderate limitations. (R. at 512.) He further opined that she would have moderate limitations in interacting with the public, supervisors, and coworkers, as well as sustaining concentration and persisting effectively in the workplace. He also believed she would be moderately limited in dealing with changes and the requirements of a work setting. (R. at 512.)

Both the plaintiff's physical and mental impairments were also evaluated by state agency physicians. Shirish Shahane, M.D., reviewed West's medical records and concluded that she was not disabled. (R. at 401-05.) Dr. Shahane opined that the plaintiff was capable of occasionally lifting 20 pounds, frequently lifting 10

pounds, standing or walking six hours in an eight hour work day, as well as sitting six hours in an eight hour work day. He concluded that her ability to push and pull would be unlimited, and that she would experience no manipulative, visual or communicative limitations. Dr. Shahane opined that West could occasionally climb, balance, stoop, kneel, crouch, or crawl, and that she should avoid concentrated exposure to heights. Dr. Shahane noted that West's treatment "for her impairments has been essentially routine and conservative in nature. She has been prescribed, and has taken, appropriate medications for the alleged impairments . . . [and they] have been relatively effective in controlling her symptoms." (R. at 405.) Brian M. Strain, M.D., also reviewed the plaintiff's medical records and concluded that she was not disabled. Dr. Strain concurred with Dr. Shahane, other than to note his belief that West was limited in her ability to reach in all directions and was limited in her ability to push and pull with her upper extremities. (R. at 468-473.)

State Agency physicians also reviewed the plaintiff's records regarding her mental impairments. Julie Jennings, Ph.D., conducted a review of these records and concluded that West suffered from depression and anxiety, neither of which met the specific diagnostic criteria listed in the regulations. (R. at 407-419.) Dr. Jennings opined that West was mildly restricted in her activities of daily living, maintaining social function, and maintaining concentration, persistence and pace.

(R. at 417.) Dr. Jennings noted no history of episodes of decompensation. Dr. Jennings observed that West's activities were limited more as a result of her physical allegations than her mental ones, and found West to be partially credible. Richard J. Milan, Jr., Ph.D., also evaluated the plaintiff's records. (R. at 453-466.) He agreed with Dr. Jennings' finding that the plaintiff was not disabled, and explained that her subsequent medical records and activities of daily living undermined any allegation that West's impairments were severe.

West testified before the ALJ that her daily activities include watching television, preparing meals, laundry, washing dishes, and occasionally cleaning. She also does yard work, including mowing their yard with a tractor and planting flowers. (R. at 73-75.) West stated that she enjoys quilting, but does not do it as much anymore as a result of the pain she experiences. The plaintiff also goes shopping, often with her sister, and she can drive herself independently whenever she needs to travel. (R. at 81.) Furthermore, West reported no problems getting along with her family, friends, and neighbors, and was even able to travel to Vermont to help her daughter after the birth of her new baby. (R. 58-59.) The plaintiff reported that she was able to pay bills, count change, handle a savings account, and use a checkbook. (R. at 182.)

At the hearing on May 18, 2010, Leah Perry Sawyers, a VE, testified. The ALJ posed a hypothetical scenario in which she described an individual with the

residual functional capacity ("RFC") to perform light work with some modifications as defined by Dr. Shahane, the state physician. The VE indicated that a person with these limitations would be able to perform West's past relevant work as an office clerk or bookkeeper. Although the plaintiff's position at her husband's company was a semi-skilled job that arose from unique circumstances, the VE noted that at least 5,000 similar unskilled positions exist in the regional economy. (R. at 80.) The VE further testified that if an individual presented with the limitations described by Dr. Lanthorn, that person would not be able to work. (R. at 52-53.)

The ALJ found that West met the insured status requirements through Dec. 31, 2012, had not engaged in substantial gainful activity since the alleged onset date of February 28, 2007, and had the severe impairments of a back disorder, osteopenia, osteoarthritis, and neck, leg and knee pain. The ALJ also found that none of West's impairments or combination of impairments met or medically equaled one of the listed impairments under Social Security Administration regulations. Crediting the opinions of the state agency physicians, the ALJ found that West has the RFC to perform light work with occasional postural limitations and limited concentrated exposure to heights. Given these restrictions, the ALJ concluded that the plaintiff was capable of performing her past relevant work as a bookkeeper and office clerk, and therefore was not disabled under the regulations.

The plaintiff contests the ALJ's decision, arguing that she failed to accord proper weight to the opinion of an examining physician, Dr. Lanthorn, in evaluating the severity and extent of West's mental impairments. The plaintiff further argues that the ALJ erred in declining to order an additional consultative medical evaluation of her mental impairments. As a result, the plaintiff contends that the RFC determination is not supported by substantial evidence because the ALJ failed to properly consider the combined effect of the plaintiff's physical and mental limitations. The plaintiff also asserts that the ALJ's evaluation of West's lack of credibility in her subjective allegations and descriptions of pain and other symptoms was not supported by substantial evidence. Finally, the plaintiff contends that the ALJ improperly considered unfounded allegations of fraud against West and thereby exhibited bias in reaching her decision.

The Commissioner has responded, arguing that the ALJ reasonably considered Dr. Lanthorn's opinion and reasonably determined that it was not necessary to order an additional consultative examine of West's mental impairments. The Commissioner further argues that the ALJ's RFC determination adequately represented the combined effects of the plaintiff's physical and mental limitations. In addition, the Commissioner contends that the ALJ reasonably considered the medical evidence in evaluating the plaintiff's subjective complaints about her pain and other symptoms. Finally, the Commissioner argues that the

ALJ did not abuse her discretion or inappropriately discriminate against the plaintiff by considering the plaintiff's employment history or any other improper factors.

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or medically equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520(a) (2013). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*,

715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's RFC, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through the application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). I must not reweigh the evidence or make credibility determinations because those functions are left to the ALJ. *Johnson*, 434 F.3d at 653. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (internal quotation marks and citation omitted).

The plaintiff's first argument is that the ALJ's decision is not supported by substantial evidence because she did not adequately consider the limitations imposed on the plaintiff by her mental impairments. Specifically, the plaintiff challenges the ALJ's decision to accord less weight to Dr. Lanthorn's May 2010

assessment, which was completed in only one meeting with the plaintiff and which offers specific opinions regarding the plaintiff's residual capacity to work. The ALJ chose to accord substantial weight to the opinions of the state agency physicians. "Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir.1992). For that reason, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig,* 76 F.3d at 590.

The ALJ specifically addressed her reasons for discounting the opinion of Dr. Lanthorn, and I believe this decision is supported by substantial evidence. Dr. Lanthorn only saw the plaintiff on one occasion for a consultative psychological evaluation, at the request of her attorney in this case. His conclusions and opinions are inconsistent not only with the plaintiff's activities of daily living, but also with her behavior regarding her other conditions. Dr. Lanthorn suggested that it was possible that West had "given up hope" and that her condition might not even be subject to improvement with treatment. No other provider made such a sweeping supposition regarding West's mental health, and West consistently followed up with her other physicians in seeking treatment for her conditions. Moreover, the tests Dr. Lanthorn performed regarding the degree of pain West experienced seem

inconsistent with the medical records regarding the available medical evidence of such pain. The record shows that West was capable of caring for her home and her husband, which belies a suggestion that she had "given up hope." Dr. Lanthorn also did not give an explanation for or cite any evidence supporting his conclusion that West would be moderately impaired in interacting with others in a work environment. I believe the ALJ's decision to give less weight to Dr. Lanthorn's opinion was supported by substantial evidence.

The plaintiff has also argued that the ALJ ignored Ms. Mink's assignment of a GAF score of 59, arguing that this opinion supports not only Dr. Lanthorn's conclusions but also the idea that the plaintiff suffered from more severe mental impairments. The internal inconsistencies of Ms. Mink's records, however, are obvious. Ms. Mink concluded that the plaintiff was cooperative, warm, frank, capable, and responsible. Her memory, judgment and insight were intact, she was oriented times three, and she appeared to be of average intelligence. Her thought process flowed smoothly, her thought content showed no abnormalities, and her ability to think abstractly was normal. Yet Ms. Mink still assigned a GAF score of 59, which would indicate a moderate level of impairment. Given that the plaintiff exhibited these capacities, and that she is capable of independently managing her household and finances, it would seem inconsistent to conclude that the plaintiff's depression and anxiety resulted in a level of impairment that would satisfy any of

the listing categories under paragraphs A, B or C of 20 C.F.R. pt. 404, subpt. P, app. 1 (2013). The ALJ's conclusion that the evidence in the record does not support a finding of a severe mental impairment is supported by substantial evidence in the record.

The plaintiff's arguments also focus on the ALJ's failure to adequately consider her limitations due to her physical limitations when considered in conjunction with her mental limitations. That is, the plaintiff believes that the ALJ's determination of her RFC was not supported by substantial evidence. West does not object specifically to the physical limitations the ALJ determined that she would have in a work environment. Rather, the plaintiff suggests that the ALJ failed to give proper consideration to these limitations in light of mental impairments. West also suggests that the ALJ failed to properly address the severity of her subjective complaints of pain.

In making her determination of the plaintiff's RFC, however, the ALJ did specifically address the plaintiff's mental limitations. She discussed Ms. Mink's notes from their counseling sessions, specifically observing that West had slightly impaired concentration and attention, but intact memory and no cognitive abnormalities. West testified that her depression and anxiety caused her to have panic attacks and to cry, but there is little indication that these symptoms could not have been treated effectively with medication and counseling. As Dr. Jennings

observed, West's activities were limited more as a result of her physical allegations than her mental ones.

Moreover, with regard to the plaintiff's subjective complaints of pain, substantial evidence supported the ALJ's decision that the plaintiff was capable of completing light work with some postural limitations. Although the plaintiff was certainly diagnosed as suffering from degenerative disc disease and other joint ailments, her course of treatment and daily activities do not indicate a severe level of impediment. West consistently declined any suggestion of surgery as a treatment option. As Dr. Shahane noted, her course of treatment, consisting entirely of medication and physical therapy, was essentially routine and relatively conservative in nature. Moreover, West was able to ride a lawn tractor, garden, cook and do other household chores.

The plaintiff's final argument is that the ALJ gave consideration to improper factors in concluding that the plaintiff was not credible with regard to the severity of her mental and physical impairments. Specifically, the ALJ questioned whether the plaintiff was eligible for disability insurance benefits at all, given that she had only started receiving a large salary from her husband's company — for whom she served as a bookkeeper for many years — subsequent to her husband's decision to retire. The plaintiff also often referred to both her and her husband as "retired" when asked about their occupations. (R. at 37.) In her opinion, the ALJ expressed

concern that the plaintiff or her husband might have been attempting to engage in tax fraud.[4] Despite this concern, the ALJ found that there was sufficient evidence in the record to conclude that the plaintiff was not disabled during the relevant time period without considering this additional factor. For the reasons outlined above, I agree. The ALJ's determination that the plaintiff retained the RFC to continue in her prior employment as an office clerk was supported by substantial evidence.

IV

For the foregoing reasons, I find that the Commissioner's decision is supported by substantial evidence. The plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: September 3, 2013

/s/ James P. Jones
United States District Judge

---

[4] In her brief, the plaintiff states that this observation suggests an improper bias and the potential for gender discrimination. This contention is without foundation in the record.